JAMES STEVENS *vs.* BENJAMIN PARKER & another.

A *bona fide* holder, for a valuable consideration, of an accepted order, which is not negotiable, for the payment of money, cannot maintain an action thereon against the acceptors, if, prior to its coming into his possession, and while it was intrusted by the payee to the drawer, with authority to collect and receive the amount to his own use, they paid the same to the drawer; and declarations of the drawer, made while he so held the order, are competent to prove that it was so paid to him. And the fact that the order was originally given and accepted for a fraudulent purpose is immaterial.

CONTRACT brought in the name of the plaintiff by James M. Stevens, upon the following order : " Medford, March 31, 1857. Messrs. Benjamin Parker and Obadiah George. Gentlemen : For value received, please pay to James Stevens or order any

sum or sums that you may receive upon the sale of thirteen holes of brick mortgaged by me to you on the 3d of November A. D. 1856, for seven hundred dollars and the interest that may accrue thereon, after deducting from the net proceeds of the sales of said brick the amount that may be due you upon said mortgage as aforesaid, and his receipt shall be your discharge therefor, and oblige your very obedient servant, John Friend. Accepted : Benjamin Parker. Obadiah George."

After the former decision in this case, (3 Allen, 256,) the case was tried again, before *Russell*, J., in the superior court; and, after evidence had been introduced tending to prove that the plaintiff assigned the accepted order to James M. Stevens, in December 1858, as collateral security for $400 money borrowed, evidence was introduced, on the part of the defendants, tending to show that the order was drawn without consideration, to prevent the property of the drawer from being attached, and that after its acceptance by them the plaintiff said to them that it would remain in the drawer's hands, unless his property mentioned therein should be attached, and that the plaintiff had no interest therein whatever; and that the plaintiff at the same time told them to pay the amount to the drawer, precisely as if they had not accepted the order, unless the property should be attached. There was also evidence that the defendants received $1300 from the sale of the bricks, and that the order was seen in the drawer's hands in September or October 1857; and the defendants then offered evidence of declarations by the drawer, made after the plaintiff's statements to the defendants, as above recited, and both before and after September 1857, to show payment to the drawer, and fraud committed by the plaintiff. The plaintiff's counsel then stated that he waived all claim to recover anything more than the interest of James M. Stevens in the acceptance, and thereupon the evidence was excluded. The defendants then put in a general release, under seal and dated March 12, 1859, by James Stevens to Benjamin Parker, of all demands and causes of action whatever, the consideration of which was expressed to be one dollar.

The judge, among other things, instructed the jury that if

James Stevens and Friend and the defendants agreed on a fraudulent transaction for the purpose of defrauding the creditors of Friend, and if it was agreed by all these parties, as a part of this transaction, that the order above named should remain in the hands of Friend, and be paid to him, if his creditors did not trouble him ; and if the debt was so paid by the defendants, in pursuance of that direction ; and if the order afterwards came into the hands of James M. Stevens for a good consideration, in good faith, and without knowledge of the transaction or of the payment, then the plaintiff could recover, to the extent of the interest of James M. Stevens, for his benefit.

The judge submitted the following questions to the jury for special findings, and they were answered as follows :

1. " Was the original purpose of Friend in giving his order, to defraud or delay creditors ? " Answer. " Yes." 2. " If the above question is answered in the affirmative, did James Stevens participate in the fraudulent purpose ? " Answer. " Yes." 3. " If the above questions are answered in the affirmative, did James M. Stevens receive the order in good faith, without knowledge of the fraud, and for valuable consideration ? " Answer. " Yes." 4. " At the time of Stevens's release to Parker, had Parker received notice that the order had been transferred to James M. Stevens ? " Answer. " Yes." 5. " Did the order remain in the possession of Friend with the assent of James Stevens, until January 1859 ? " Answer. " No." 6. " Did the defendants pay Friend, before the transfer to James M. Stevens, the balance due for the bricks, beyond the mortgage ? " Answer. " No."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*I. W. Richardson & T. S. Dame*, for the defendants.

*N. Richardson & S. J. Thomas*, for the plaintiff.

CHAPMAN, J. It is averred in the declaration that this action is brought in behalf of James M. Stevens; but such an averment has no legal force. It appeared in evidence that in December 1858 the plaintiff borrowed $400 of his son James M. Stevens, and gave him this order as collateral security therefor. There was also evidence tending to show that the instrument

was made without consideration, and for the purpose of defrauding Friend's creditors; that the plaintiff told the defendants that it would remain in the hands of Friend, unless the mortgaged property to which it refers should, be attached by Friend's creditors as his property; that the plaintiff had no interest in it whatever; and that the defendants might pay the money to Friend precisely as if it had not been made, unless the property should be attached; that accordingly the order went into Friend's possession, and remained there till September or October 1857; that the defendants received thirteen hundred dollars for the sale of a part of said bricks, from which some expenses were to be deducted. They offered evidence of declarations made by Friend, both prior and subsequently to September 1857, to prove payment to Friend, and fraud committed by the plaintiff. These declarations were rejected.

There can be no pretence that the declarations of Friend would be competent evidence to prove that the plaintiff had committed a fraud. Nor could his admissions of payment, made after the defendants knew he had given up the order to the plaintiff, be admissible against the plaintiff. But while he held it in his possession, for the purpose of having the amount paid to himself, for his own use, by consent of the plaintiff, his acknowledgment of such payment would be competent. If it had been made in writing, either by indorsement on the order, or by a separate receipt, it would have been too plain to admit of doubt. An oral admission is equally valid. It is an admission made as to the payment while it was his property and by a person since deceased. A portion of the evidence offered ought therefore to have been admitted.

The instruction given to the jury was also erroneous. It was that if the parties to the order agreed on a fraudulent transaction for the purpose of defrauding the creditors of Friend, and, as a part of the transaction, that the order should remain in the hands of Friend, to be paid to him if his creditors did not trouble him; "and if the debt was so paid by the defendants, in pursuance of that direction; and if the order afterwards came into the hands of James M. Stevens for a good consideration,

Stevens *v*. Parker & another.

in good faith, and without knowledge of the transaction or of the payment, then the plaintiff could recover, to the extent of the interest of James M. Stevens, for his benefit."

Upon this instruction, the jury would be required to find a verdict for the plaintiff, to the amount of $400 and interest, although the order had been fully paid by the defendants in pursuance of the agreement of the plaintiff before he pledged it to his son. But this is clearly erroneous. The plaintiff had a right, if he was lawfully in possession of the order, to assign it to his son as collateral security for the money lent. The son could have a right to bring a suit in the plaintiff's name to collect any balance that might remain due upon it, at any time when the defendants should be notified of the assignment. But payment to Friend before such notice would be an equitable defence; and the son took merely an equitable interest in the order, subject to all equitable defences. The right to sue in the plaintiff's name is an equitable right, which courts of law in this state protect; and the subsequent attempt of the plaintiff to discharge the defendants is to be regarded as a fraud upon his son, and is inoperative. *Hart* v. *Western Railroad*, 13 Met. 108, and cases there cited.

But the assignment could not deprive the defendants of the benefit of payments already made, or made at any time before notice of the son's claim; for that would be inequitable. And it would enable the plaintiff to convey to him a greater right than he had himself.

The questions propounded to the jury and answered by them, do not relieve the case from the effect of the erroneous rulings. The first three merely establish the good faith of James M. Stevens, and the fraud of the plaintiff and Friend. The fourth avoids the effect of the release to Parker. The fifth relates to the possession of the order in January 1859, a period subsequently to the pledge to James M. Stevens. The sixth establishes the fact that the defendants did not pay the balance to Friend before the transfer to James M. Stevens; but this is not a material fact, unless they had knowledge of the transfer.

*Exceptions sustained.*